UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC HENRI DAVID,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE CHIALA FARMS, INC, et al.,<br><br>Defendants. | Case No. 24-cv-04040-SI<br><br>**ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 24, 25, 40 |

On November 13, 2024, plaintiff Marc Henri David, who is representing himself, filed an emergency motion for a temporary restraining order ("TRO") "to enjoin Defendant GC Farms, Inc. from continuing its unauthorized use of Plaintiff's copyrighted GC Farms logotype." Dkt. No. 24 ("Mot.") at 1. The Court set a briefing schedule, Dkt. No. 29, and defendants filed an opposition. Dkt. No. 31 ("Opp'n"). Plaintiff requested and received a fourteen-day extension of time to file his reply brief. Dkt. Nos. 32, 33. Plaintiff then requested an additional fourteen-day extension of time, in order to incorporate newly discovered evidence into his reply brief. Dkt. No. 35. The Court denied this request, Dkt. No. 36, and plaintiff filed his reply brief on December 13, 2024. Dkt. No. 39 ("Reply"). On December 16, 2024, plaintiff filed a motion for leave to file a supplemental declaration. Dkt. No. 40.

Plaintiff's motion for a TRO asks that the Court decide this matter without a hearing in order to resolve it as quickly as possible. Mot. at 28. The Court agrees this matter may be resolved without oral argument. *See* Civ. L.R. 7-1(b). For the reasons set forth below, the Court DENIES the motion for a TRO.

**BACKGROUND**

According to the TRO motion, plaintiff is a fine artist who independently designed the GC Farms logotype in March 2000, using his "original digital pointillism technique[.]" Dkt. No. 24-1 ("Marc David Decl.") ¶ 1. In early 2000, George Chiala Jr. approached plaintiff and Catherine David about developing printed brochures for GC Farms. *Id.* ¶ 4. During this process, plaintiff created the GC Farms logotype that is at issue in this case. *See id.* Plaintiff declares, "I consistently asserted my ownership of the logotype, ensuring that George Jr. and other GC Farms representatives were clear about my rights." *Id.*

On May 24, 2021, plaintiff registered the copyright for the GC Farms logotype with the U.S. Copyright Office.[1] *Id.* ¶ 3 & Ex. 2. Three days later, on May 27, 2021, GC Farms applied for a federal trademark on the same logotype with the USPTO, listing "George Chiala Farms, Inc." as the owner of the mark. *Id.* ¶ 3 & Ex. 3.

According to the declaration filed by Catharine David, for over a decade, Catharine David Consulting (owned and operated by Catharine David) "manag[ed] all aspects of GC Farms' marketing[.]" Dkt. No. 24-2 ("Catharine David Decl.") ¶ 1. This included "support[ing] Marc David in managing his logotype and other intellectual property (IP) related to GC Farms, ensuring consistent application." *Id.* ¶ 3. Catharine David "provided services to GC Farms strictly as an independent contractor with no work-for-hire agreement, retaining control over design and creative processes." *Id.* ¶ 4.

In November 2023, GC Farms ended Catherine David's role "unilaterally . . . by simply notifying [her], after the fact, that an internal marketing department had been established" "under the supervision of the CEO's niece[.]" *Id.* ¶¶ 4, 16. "The establishment of an internal marketing department . . . introduc[ed] a clear need for a formal licensing agreement to protect Marc's logotype and other intellectual property." *Id.* ¶ 17. In the spring of 2024, Catharine David and GC Farms CFO Christi Becerra exchanged communications regarding licensing. *Id.* ¶¶ 21-22. Becerra

---

[1] Plaintiff's supplemental declaration explains that he registered the copyright in May 2021 in response to concerns regarding the misuse of the GC Farms brands by other companies on the internet. *See* Dkt. No. 40 ("Marc David Suppl. Decl.") ¶¶ 8-17.

proposed a contract containing "work for hire" provisions. *Id.* ¶ 21. When Catherine David refused to sign the agreement, Becerra threatened to end their business relationship. *Id.* ¶¶ 23-25. Catharine David's declaration states, "On June 3, 2024, I formally terminated our business relationship with GC Farms. I requested that they cease using our IP, including the logotype, by June 17, 2024, unless a licensing or purchase agreement was established . . . . I emphasized that any continued use of our IP beyond June 17, 2024 would constitute infringement." *Id.* ¶ 26.

Plaintiff states that on June 21, 2024 he discovered GC Farms' May, 2021 trademark application claiming ownership of the logotype. Marc David Decl. ¶ 3; *see also* Dkt. No. 1 ("Compl.") ¶ 11.

On July 3, 2024, plaintiff filed this suit against George Chiala Farms, Inc. and Jeff Nunes (general counsel for GC Farms). Dkt. No. 1. He brings one claim for violation of the Copyright Act, 17 U.S.C. § 501. *Id.* at 3. On October 18, 2024, defendants answered the complaint and filed counterclaims against plaintiff for declaratory relief, seeking a declaration of non-infringement, of invalidity of copyright registration and unenforceability, and of implied license. Dkt No. 21. Defendants also filed a third-party complaint against Catharine David for equitable indemnity, contribution, restitution and unjust enrichment, declaratory relief under 28 U.S.C. § 2201(a), declaratory judgment of breach of implied license, and misrepresentation. Dkt. No. 21-1.[2]

On November 13, 2024, plaintiff filed the present motion for a TRO.[3] Dkt. No. 24. He states that the shift to GC Farms' new internal marketing department and the termination of its relationship with Catharine David Consulting have resulted in loss of oversight over use of the logotype that "now poses a substantial risk to Plaintiff's reputation and the integrity of his work." *Id.* at 21. He alleges that the continued misuse of the logotype "risks irreversible damage to his standing among collectors and galleries" and that he has been forced "to indefinitely delay the

---

[2] Marc and Catherine David have moved to dismiss the counterclaims. Dkt. Nos. 37, 38. The briefing on those motions is not yet complete, and the Court will rule on those motions in a separate order at a later date.

[3] Plaintiff states that recent health challenges and his pursuit of good-faith settlement discussions prevented him from filing for a TRO earlier. Marc David Decl. ¶ 13; Reply at 12.

3

launch and promotion of his fine art portfolio."[4]  *Id.* at 20-21.

Plaintiff requests the following relief: immediate cessation of unauthorized logotype use; removal of the logotype from all client-facing documents within 14 days; removal or replacement of the logotype on specific assets (i.e., removal from all digital platforms within 7 days, removal from production of new letterhead and envelopes within 7 days, immediate cessation from new product labels, prohibition on producing or ordering new apparel with logotype);[5] removal from physical signage and equipment (i.e., signs, trucks, vehicles, checks and credit cards) within 90 days; and immediate suspension of trademark assertion.  Mot. at 26-28.  As noted above, defendants filed an opposition to the motion, and plaintiff has filed a reply.  This matter is now ready for the Court's review.

## LEGAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008).  The standard for a temporary restraining order is the same as for a preliminary injunction.  In order to obtain such relief, the plaintiff "must make a 'threshold showing' of four factors."  *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 844 (9th Cir. 2020) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam)).  The plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20 (citations omitted).  "A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment."  *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)).  Alternatively, a plaintiff

---

[4] According to plaintiff, the GC Farms logotype represents the only instance where plaintiff used his distinctive digital pointillism technique commercially.  Mot. at 18.

[5] Plaintiff allows that defendants may continue using the logotype on pre-existing printed marketing materials such as catalogs, business cards, and labels, until the inventory is exhausted. Mot. at 27.

1   may demonstrate "that serious questions going to the merits were raised and the balance of hardships
2   tips sharply in the plaintiff's favor," so long as the other two *Winter* factors are also met. *All. for*
3   *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). "These factors are evaluated
4   on a sliding scale." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020)
5   (citing *All. for the Wild Rockies*, 632 F.3d at 1131-34).

**DISCUSSION**

**I.   Motion for Leave to File Supplemental Declaration**

9   On December 16, 2024, several days after the reply brief was due, plaintiff filed a motion
10  for leave to file a supplemental declaration. Dkt. No. 40. He states that the supplement is to respond
11  to certain arguments raised in defendants' opposition that could not be fully addressed within the
12  reply's page limitations. *Id.* at 1. Defendants object to this and to the supplemental reply
13  declaration, and plaintiff has filed replies to the objections. Dkt. Nos. 41, 42, 43, 44.
14  On this occasion, because plaintiff is representing himself and because the filing was made
15  promptly, the Court will GRANT the motion to file the supplemental declaration. The declaration
16  filed at Dkt. No. 40-1 is deemed filed, and the Court has considered it in ruling upon the TRO.
17  However, the Court cautions that any future requests to exceed the page limits must be made *before*
18  the brief is due. Requests to extend deadlines or to exceed page limits should be filed according to
19  the procedures in Civil Local Rule 7-11, Motions for Administrative Relief.

**II.  Likelihood of Success on the Merits**

22  The Court will deny the motion for a TRO because plaintiff has not shown a likelihood of
23  success on the merits. Even assuming plaintiff is the sole owner of the copyright, which defendants
24  dispute, the current record presents a strong case for defendants' position that they are not liable for
25  copyright infringement because plaintiff granted them an implied license to use the logotype.
26  As the Ninth Circuit has explained, "Though exclusive licenses must be in writing, 17 U.S.C.
27  § 204, grants of nonexclusive licenses need not be in writing, and may be granted orally or by
28  implication." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008) (citing *Food*

5

*Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 825-26 (9th Cir. 2001)). "[A]n implied license is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it,[] and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)) (internal quotation marks and footnote omitted).

In *Gagnon*, the Ninth Circuit examined the conduct between an at-will, independent contractor and the marketing company that asked him to develop custom software for them. Over a four-year period, the company paid the contractor over $2 million and the contractor developed six computer programs for the company. *Id.* at 750. When the contractor later sued the company for copyright infringement for continued use of the programs after their business relationship ended, the Ninth Circuit found the contractor had granted the company an unlimited, nonexclusive license to retain, use, and modify the software. *Id.* at 757. The court found that the elements for an implied license had been met, where the contractor created the programs in response to the company's requests, where the contractor admitted he made the programs specifically for that company and delivered it to them, and where the contractor's conduct manifested an intent to grant a license. The court explained that "it defies logic that AMS would have paid Gagnon for his programming services if AMS could not have used the programs without further payment, pursuant to a separate licensing arrangement that was never mentioned" in the agreement the parties signed. *Id.* at 756-57. Nor did it matter that Gagnon had included a copyright notice in the splash screens for each computer program: "The splash screens speak to Gagnon's intent to retain copyright ownership over the programs, not to his intent to grant or not grant a license as would be his right as the copyright owner." *Id.* at 757.

Here, the elements for an implied license appear to be present, at least enough so as to defeat plaintiff's request for a TRO. According to plaintiff, he created the logotype in 2000 in response to a request from George Chiala Jr. to make printed brochures for GC Farms. Marc David Decl. ¶ 4. As to the second element for an implied license, plaintiff disputes that he "delivered" the logotype to GC Farms because "Marc David's delivery of the GC Farms logotype was always accompanied by oversight, approvals, and usage limitations." Reply at 2. But both sides agree that David in some

6

1    manner (whether one calls it "delivery" or otherwise) gave the logotype to GC Farms and GC Farms

2    has for years used the logo on its marketing materials, including labels, brochures, website, apparel,

3    etc.

4    As to the third element for an implied license, plaintiff argues there was no mutual

5    understanding of the logo's unrestricted use. Reply at 3. On this element, to determine the purported

6    licensor's intent, the Ninth Circuit looks to

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible.

*Gagnon*, 542 F.3d at 756 (quoting *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 41 (1st Cir. 2003) (quoting *Nelson Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 516 (4th Cir. 2002))). At least one of the factors here weighs against plaintiff's position, in that it does not appear plaintiff used written contracts providing that GC Farms could only use the logotype with plaintiff's future involvement or express permission. And there is insufficient evidence in the record regarding the parties' conduct at the time of creation and delivery of the copyrighted material. Much of what is before the Court now are conflicting accounts from each side regarding what they intended in years past. More factual development is needed to resolve this issue conclusively. It is possible at the end of the day that defendants will be able to prove all the elements of their implied license defense.

Finally, the Court notes that plaintiff was paid for his work. Plaintiff states it took him a month of work to create the GC Farms logotype, but that he was not compensated for a full month's work. Reply at 3 ("Marc David charged GC Farms only a fraction of the true value of his work . . ."). However, an implied license may be found even where the copyright holder is not fully compensated. *See Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 556, 559 (9th Cir. 1990) (holding that special effects company impliedly granted a nonexclusive license to movie producers to use the special effects footage, even where the producer did not pay the full amount for which the parties

1    contracted). If there was an implied license, and if plaintiff was paid, then the license would be
2    irrevocable. *See Gagnon*, 542 F.3d at 757 (finding that "because AMS paid consideration, this
3    license is irrevocable") (citations omitted).

4        The Court is not holding at this stage that plaintiff's case is entirely lost. Should this case
5    proceed to trial, in order for defendants to prevail on their implied licensing theory, they will bear
6    the burden of proving by a preponderance of the evidence that plaintiff granted them an implied
7    license to use the logotype. *See* Manual of Model Civil Jury Instructions 17.25 (Ninth Cir. Jury
8    Instructions Comm., Dec. 2023), *available at* https://www.ce9.uscourts.gov/jury-
9    instructions/node/283. Defendants will also bear the burden of proof as to the scope of the implied
10   license. *See id.*; *Oddo v. Ries*, 743 F.2d 630, 634 (9th Cir. 1984). However, at this stage, on the
11   record before it, the Court cannot find that plaintiff has shown a likelihood of success on the merits
12   or serious questions going to the merits, as is needed to grant the extraordinary remedy of a TRO.

13       The first factor in the *Winter* test is the most important. Therefore, when a movant has failed
14   to show a likelihood of success on the merits, the Court need not consider the remaining three *Winter*
15   factors. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Court declines to consider
16   the other factors here. The Court also declines to reach defendants' alternative defense regarding
17   co-authorship of the logotype.

### III.   Other Matters

Plaintiff's motion for in camera review of his proprietary design process for the GC Farms logotype, Dkt. No. 25, is denied as moot. The Court need not review the design process at this stage, in ruling on the TRO.

The initial case management conference **remains on calendar for January 10, 2025, over Zoom videoconference.**[6] The parties shall file a joint case management statement **no later than January 3, 2025.** More information regarding the case management conference is in the guidelines

---

[6] The case management conference is currently set for 2:30p.m. The Courtroom Deputy will notify the parties if the Court's calendar requires moving the conference to an earlier time on January 10.

8

at Dkt. No. 10. The Court understands that plaintiff wishes to resolve this case quickly. Plaintiff may request an expedited schedule in the joint case management statement, though the Court cannot guarantee that it can accommodate the request.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a TRO (Dkt. No. 24) is DENIED. Plaintiff's motion for in camera review (Dkt. No. 25) is DENIED AS MOOT. Plaintiff's motion for leave to file a supplemental declaration (Dkt. No. 40) is GRANTED.

**IT IS SO ORDERED**.

Dated: December 18, 2024

_____
SUSAN ILLSTON
United States District Judge