United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARC HENRI DAVID,

Plaintiff,

v.

GEORGE CHIALA FARMS, INC, et al.,

Defendants.

Case No. 24-cv-04040-SI

**ORDER RE: MOTIONS TO DISMISS**

Re: Dkt. Nos. 70, 71, 75, 76

Pending before the Court are multiple motions to dismiss in this case involving allegations of copyright infringement and related claims. Dkt. Nos. 70, 71, 75. Plaintiff Marc Henri David moves to dismiss the three counterclaims against him and to strike the affirmative defenses. Dkt. No. 70. Third-party defendants Catharine David and Catharine David Consulting move to dismiss the amended third-party complaint. Dkt. No. 71. Defendant George Chiala Farms, Inc. (GCF) moves to dismiss three of the four claims against it from Mr. David's first amended complaint (FAC) and to strike the prayer for statutory damages and attorneys' fees. Dkt. No. 75. Pursuant to Civil Local Rule 7-1(b), the Court found these motions suitable for resolution without oral argument and vacated the hearing.[1]

**BACKGROUND**

**I. Factual Background**

Given that there are three sets of pleadings at issue here, the Court recites only the general

[1] Defendant Jeff Nunes, general counsel for George Chiala Farms, also moved to dismiss the claims against him from Mr. David's FAC. Dkt. No. 76. After the matter was fully briefed, Mr. David voluntarily dismissed Mr. Nunes from this action. Dkt. No. 85. Accordingly, the Court DENIES AS MOOT Mr. Nunes's motion to dismiss at Dkt. No. 76.

background facts to give context for the motions. More detailed factual allegations are contained as necessary in the Discussion section below.

Two works -- the George Chiala Farms logotype, and an image titled "Agricultural Field at Sunrise" -- are at the center of this copyright infringement dispute. Marc Henri David is an artist who says that he is the sole creator of the GCF logo, which all parties agree was created in 2000 and which GCF has used in various contexts over the years, continuing through the present. Dkt. No. 72, Marc David FAC ¶¶ 11-13, 35. Mr. David states that he designed this logo "in his proprietary digital pointillism style." *Id.* ¶ 12. On May 24, 2021, Mr. David filed a copyright application for the logo with the United States Copyright Office. *Id.* ¶ 17 & Ex. A. Four days later, on May 27, 2021, general counsel for GCF, Jeff Nunes, filed a trademark registration application for the GCF logo and claimed that GCF was the owner of the mark. *Id.* ¶ 17 & Ex. B. The image of the logo is reproduced below:

Mr. David states that in July 2012 he created an image titled "Agricultural Field at Sunrise." *Id.* ¶ 29. In April 2024, Mr. David registered this image with the U.S. Copyright Office. *Id.* ¶ 30. The image of "Agricultural Field at Sunrise" is reproduced below:

Catharine David, who is Mr. David's partner, provided marketing services to GCF beginning in early 2000. *Id.* ¶ 12. In 2009, Ms. David began working under the name Catharine David Consulting (CDC) and "became GCF's exclusive marketing team until November 2023." *Id.* ¶ 15. During the course of their business relationship, there was no signed contract. Dkt. No. 49, Am. Third-Party Compl. ¶ 18. In November 2023, GCF formed an internal marketing department and hired the CEO's niece as the new Marketing Coordinator, though Ms. David continued to manage the GCF website. Marc David FAC ¶ 20.

Beginning in 2012, the landing page for the GCF website contained the GCF logo and a copyright mark stating "© 2007-2012 George Chiala Farms, Inc." Dkt. No. 21, Counterclaim ¶ 23. The "About Us" page of the website stated, "Welcome to GCFarmsInc.com ('Website') GCFarmsInc.com is owned and operated by George Chiala Farms Inc." and "No part of the site may be copied, reproduced, retransmitted, distributed, published, commercially exploited, or otherwise transferred without the written permission from the principles of George Chiala Farms, Inc." *Id.* According to GCF, "[t]he logo, copyright symbol, and statement regarding the ownership of the website contents, [sic] remained on the GCF website at least from March 2012 until March 2024." *Id.* ¶ 24.

Mr. David also alleges that in April 2023 Ms. David, with Mr. David's permission, used the "Agricultural Field at Sunrise" image in a PowerPoint presentation that Ms. David created for George Chiala, Jr. to present to the ConAgra board of directors. Marc David FAC ¶ 31. He alleges this was for "a one-time use" and no transfer of ownership was sought or obtained. *Id.* He then alleges that after GCF granted the Davids access to the GCF server in November 2023, Ms. David "discovered several instances of copyright infringement of the 'Agricultural Field at Sunrise' image," where GCF used the image in other presentations without Mr. David's knowledge or consent. *Id.* ¶ 32.

Mr. David alleges that, on January 18, 2024, Mr. David, Ms. David, and George Chiala, Jr. met to discuss the logotype's ownership but did not come to an agreement. *Id.* ¶ 23. On April 4, 2024, GCF sent Ms. David "a proposed 'Media Consultant Master Agreement' containing retroactive work-for-hire provisions and an assignment of all copyright and trademark rights to

GCF." *Id.* ¶ 25. The Davids refused to sign. *Id.* On June 2, 2024, the Davids gave GCF "two weeks' notice that, unless a licensing or purchase agreement was reached, GCF must stop using the Davids' intellectual property by 17 June 2024." *Id.* ¶ 26. It was also in June 2024 that Mr. David alleges he discovered GCF's USPTO trademark registration for the logotype. *Id.* ¶ 28.

Mr. David alleges that, as he is the sole owner of the logo and the "Agricultural Field at Sunrise" copyright, GCF is infringing on his copyrights by continuing to use these works in its marketing without any ownership or license and after he told them not to use the logotype beyond June 17, 2024. *Id.* ¶¶ 11, 26, 34. GCF says that it did not infringe because George Chiala, Jr. is a joint author of the logo. Counterclaim ¶¶ 27-34. GCF claims that Mr. David committed fraud upon the United States Copyright Office when Mr. David procured the registration for the logo. *Id.* ¶ 37. GCF also alleges that it has an implied license to use the logo. *Id.* ¶¶ 34-43. GCF brings numerous claims against Ms. David and CDC, essentially arguing that any copyright infringement, if it exists, was due to actions and/or omissions by Catharine David and her business in misleading GCF regarding ownership of the logo. Dkt. No. 49.

## II.    Procedural Background

On July 3, 2024, Mr. David, who was self-represented at the time, filed this suit against George Chiala Farms, Inc. and Jeff Nunes for violation of the Copyright Act, 17 U.S.C. § 501. Dkt. No. 1. Defendants answered the complaint and filed counterclaims against Mr. David for declaratory relief. Dkt. No. 21. Defendants also filed a third-party complaint against Catharine David and Catharine David Consulting. Dkt. No. 21-1. Defendants later amended the third-party complaint. *See* Dkt. No. 49. In November 2024, Mr. David moved for a temporary restraining order, which the Court denied. *See* Dkt. No. 45.

Upon Mr. David's request, the Court then stayed the case for 90 days due to Mr. David's medical issues. Dkt. Nos. 51, 54. Once the stay was lifted, the Court granted the Davids' request to continue the initial case management conference while the Davids sought counsel. Dkt. Nos. 58, 60. The Davids are now represented by counsel, and the various motions to dismiss are ripe for review.

## LEGAL STANDARDS

### I. Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether to grant a motion to dismiss, the Court must assume the plaintiff's allegations are true and must draw all reasonable inferences in his favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### II. Rule 9(b) Heightened Pleading Standard for Allegations of Fraud

For allegations of fraud or mistake, a complaint must meet the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Fraud or mistake can be averred specifically, or by alleging facts that necessarily constitute fraud, unilateral mistake, or mutual mistake (even if those terms are not explicitly stated). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Rule 9(b) is satisfied if the allegations "identif[y] the circumstances constituting fraud (or mistake) so that the defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess*, 317 F.3d at 1103.

**III. Rule 12(f) Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). When a claim is stricken, "leave to amend should be freely given," provided no prejudice results against the opposing party. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

**IV. Amendment**

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I. Compliance with Local Rules**

Before discussing the merits, the Court addresses the Davids' failure to comply with certain of this district's Civil Local Rules, without the Court's leave. Ms. David's motion exceeds the allowable page limit by more than seven pages, and some portions of the Davids' briefs use smaller than 12-point font. *See* Civ. L.R. 3-4(c)(2), 7-2(b). After GCF noted the excess pages in its opposition brief, Ms. David's reply stated only that "a few additional pages were required to adequately address the seven separate causes of action alleged against CDC in the TPC[.]" *See* Dkt. No. 78 at 1. This is not adequate reason to flout the local rules.

The Court admonishes the Davids—and their counsel—to comply with this District's Civil Local Rules and with Judge Illston's Standing Order in all respects. *Failure to do so in the future may result in the Court striking the non-compliant filing sua sponte.*

**II. Marc David's Motion to Dismiss Counterclaims and Strike Affirmative Defenses**

Mr. David moves to dismiss the counterclaims GCF has asserted against him. In its answer, GCF asserted counterclaims against Mr. David seeking declaratory relief for non-infringement, declaratory relief for invalidity of copyright registration and unenforceability, and declaratory judgment of implied license. *See* Dkt. No. 21, Counterclaim ¶¶ 27-43.

**A. First Counterclaim**

In its first counterclaim, GCF seeks declaratory relief of non-infringement, alleging that GCF is a joint author of the GCF logo and, as such, "has the independent right to use, transfer or license the copyright." *Id.* ¶¶ 27-34.

**1. Factual Background**

In evaluating the motion to dismiss GCF's counterclaims, the Court takes GCF's allegations as true and draws all reasonable inferences in GCF's favor. *See Usher v*, 828 F.2d at 561. GCF alleges that in early 2000, George Chiala, Jr. "approached both Catharine David and Marc David about creating a logo for GCF." Counterclaim ¶ 8. George Chiala, Jr. "had seen logos from some of GCF's competitors that he liked, and therefore [he] wanted something that would capture attention using certain elements of those particular competitors." *Id.* GCF hired the Davids "specifically to work with" George Chiala, Jr. to create the GCF logo. *Id.* ¶ 9. During their meetings, "George explained the elements from competitors that he wanted emulated in the new GCF Logo including style, arrangement, color and use of the name GC Farms." *Id.* GCF alleges that George Chiala, Jr. "exercised direction and control over the Work as it was developed . . . based on [his] desire to capture characteristics of competitor's [sic] trademarks." *Id.* at 13 ¶ 30.[2] GCF began using the GCF logo "in all aspects of company branding" around March 2000. *Id.* ¶ 10. There was no discussion during the creation process that "anyone other than GCF would own and use the logo" nor was there ever "a discussion about licensing the GCF Logo and [George Chiala, Jr.]

[2] Because GCF misnumbered the paragraphs in their counterclaims, the Court includes the page number where needed for clarity.

United States District Court
Northern District of California

believed that the GCF [sic] had purchased all rights to the GCF Logo at the outset." *Id.* ¶ 10.

**2. Legal Standard**

Under the Copyright Act, a "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "The authors of a joint work are co-owners of copyright in the work." *Id.* § 201(a). The Ninth Circuit uses three criteria to determine whether a work is jointly authored, in the absence of a contract, as set forth in *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000):

> First, we determine whether the "putative coauthors ma[de] objective manifestations of a shared intent to be coauthors." *Id.* A contract evidencing intent to be or not to be coauthors is dispositive. *Id.* Second, we determine whether the alleged author superintended the work by exercising control. *Id.* Control will often be the most important factor. *Id.* Third, we analyze whether "the audience appeal of the work" can be attributed to both authors, and whether "the share of each in its success cannot be appraised." *Id.* (quotations omitted).

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (citing *Aalmuhammed*, 202 F.3d at 1234). In addition to these criteria, each author must have made "an independently copyrightable contribution." *Id.* (citing *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990)). That is, "to be an author, one must supply more than mere direction or ideas; one must 'translate an idea into a fixed tangible expression entitled to copyright protection." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989). Courts are to apply these factors flexibly; the test for joint authorship "cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much." *Aalmuhammed*, 202 F.3d at 1235. "Control in many cases will be the most important factor." *Id.* at 1234.

**3. Analysis**

In moving to dismiss the first counterclaim, Mr. David argues that GCF's allegations fail to establish that George Chiala, Jr. contributed any protectable elements to the logo and fail to allege mutual intent to be coauthors. Dkt. No. 70 at 4-5. He also argues that the first counterclaim

contradicts GCF's third counterclaim for an implied license and that the delayed assertion of joint authorship undermines his claim. *Id.* at 6-7.

**a. Shared Intent**

In the absence of a contract, a court's inquiry into the "objective manifestations of a shared intent to be coauthors" focuses on the facts alleged. *Aalmuhammed*, 202 F.3d at 1235. In *Reinsdorf v. Skechers U.S.A.*, the district court looked to the parties' behavior. 922 F. Supp. 2d 866, 874 (C.D. Cal. 2013). There, the fact that one party charged the other for the work of taking photographs and also for usage of the photographs weighed against a finding of an intent to be coauthors. *Id.* The court explained, "A party intending to jointly produce a finished work generally would not require payment from a co-author, and conversely, would not likely agree to pay for a purported co-author's contribution." *Id.* In a contrasting example, another judge in the Central District Court of California found that a plaintiff sufficiently pleaded a shared intent to be coauthors by alleging that "he was invited to write music together with Post and Dukes, and that both the Composition and Recording were created on August 8, 2018, as a result of their collaboration." *Armes v. Post*, No. 2:20-CV-03212-ODW (PJWX), 2020 WL 6135068, at *6 (C.D. Cal. Oct. 19, 2020).

Here, the sparse factual allegations of the counterclaim make it difficult to discern a shared intent between GCF and Mr. David to be coauthors of the logo. The counterclaim contains no express allegations regarding shared intent. Though GCF alleges that George Chiala, Jr. and Mr. David "worked together to create the unitary Work [the logo] for George Chiala Farms, Inc.[,]" Counterclaim ¶ 28, this is insufficient because, "[w]hile intent to merge separate contributions is a necessary element of a joint work, it is not equivalent to an intent to be joint authors." *See Reinsdorf*, 922 F. Supp. 2d at 874. The counterclaim alleges that George Chiala, Jr. approached the Davids about creating a logo for GCF, that GCF hired the Davids "specifically to work with [George Chiala, Jr.]" to create the logo, and that "[e]very meeting regarding the logo creation took place with GCF, Catharine, and Marc present." Counterclaim ¶¶ 8-9. These allegations do not add up to "objective manifestations of a shared intent to be coauthors." *See Aalmuhammed*, 202 F.3d at 1234. As stated in *Reinsdorf*, "[a] party intending to jointly produce a finished work . . . would not likely agree to

pay for a purported co-author's contribution." 922 F. Supp. 2d at 874. GCF's only response in its opposition brief is that Mr. David "manifested, at the very least, a shared intent to be coauthors . . . by writing on the GCF website that GCF was the copyright owner in the website content (which included the logo)." Dkt. No. 73 at 9. The Court finds that the counterclaim's website allegations, which say nothing about the copyright or authorship of the logo specifically, do not plausibly show a shared intent to be joint authors. *See* Counterclaim ¶ 23. The Court finds the allegations of the counterclaim are lacking as to this factor of joint authorship.

**b. Copyrightable Contribution**

Because the factors regarding joint authorship must be applied flexibly, *see Aalmuhammed*, 202 F.3d at 1235, the Court also addresses Mr. David's argument that GCF failed to proffer a copyrightable contribution. Mr. David argues that GCF's "[s]uggestions, general concepts or managerial input, such as 'include vegetables' or 'look at competitor logos,' do not qualify as copyrightable contributions." Dkt. No. 70 at 4.

To establish joint authorship, GCF must allege that it made "an independently copyrightable contribution" to the logo. *See Richlin*, 531 F.3d at 968 (quoting *Ashton-Tate*, 916 F.2d at 521). "The Supreme Court has held that the *sine qua non* of copyrightability is originality and that 'original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.'" *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (internal brackets and quotation marks omitted)).

GCF alleges that George Chiala, Jr. had the idea to create a new logo for GCF and that "George explained the elements from competitors that he wanted emulated in the new GCF Logo including style, arrangement, color and use of the name GC Farms." *See* Counterclaim ¶¶ 8-9, 31. Even assuming the truth of GCF's allegations, George Chiala, Jr.'s contributions do not suffice to be independently copyrightable. "[C]olors themselves are not generally copyrightable." *Daniels v. Walt Disney Co.*, 958 F.3d 767, 772 (9th Cir. 2020) (citing *Boisson v. Banian*, 273 F.3d 262, 271

(2d Cir. 2001)). GCF alleges nothing unique about the colors used in the logo, which appears to use the natural colors of the vegetables depicted. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (holding that an artist alleging copyright infringement of his jellyfish sculptures "may not prevent others from depicting jellyfish in bright colors, because many jellyfish are brightly colored"). Neither would general style suggestions or the use of the name "George Chiala Farms" be separately copyrightable. *See Copyright Tangle Inc. v. Aritzia, Inc.*, 698 F. Supp. 3d 1180, 1186 (N.D. Cal. 2023) ("Style, no matter how creative, is an idea, and is not protectable by copyright"), *aff'd in part, rev'd in part on other grounds and remanded*, 125 F.4th 991 (9th Cir. 2025); *Apps v. Universal Music Grp., Inc.*, 763 F. App'x 599, 600 (9th Cir. 2019) ("Words and short phrases" are not copyrightable).

Because GCF's first counterclaim fails to sufficiently allege the joint authorship factors of shared intent and independent copyrightability, the Court DISMISSES the first counterclaim, with leave to amend.

**B. Second Counterclaim**

In the second counterclaim, GCF seeks a declaration that Mr. David's alleged copyright in the logo is invalid and unenforceable. Mr. David filed a copyright application for the logo on May 24, 2021, listing himself as the sole author of the GCF logo. Marc David FAC ¶ 13. GCF alleges that Mr. David was aware the logo was authored by George Chiala, Jr. "yet intentionally chose to exclude [George Chiala, Jr.] from the copyright application, which led to the Registration." Counterclaim at 14 ¶ 38. GCF alleges that Mr. David had "intent to deceive the Copyright Office" and that "the omitted information would have been material to the outcome of the Registration." *Id.* at 14 ¶¶ 30-31. Mr. David moves to dismiss the fraud counterclaim, arguing that GCF has "failed to adequately plead the requisite elements of a claim for fraud on the Copyright Office and the counterclaim does not satisfy Rule 9(b)." Dkt. No. 70 at 8, 11. Mr. David also argues that this counterclaim is duplicative of GCF's affirmative defense and should be stricken under Rule 12(f). *Id.* at 14.

The validity of a copyright registration is governed by the safe-harbor provision codified at

17 U.S.C. § 411(b)(1). It states as follows:

> A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

*Id.* "[A] party seeking to invalidate a copyright registration under § 411(b) must demonstrate that (1) the registrant submitted a registration application containing inaccuracies, (2) the registrant knew that the application failed to comply with the requisite legal requirements, and (3) the inaccuracies in question were material to the registration decision by the Register of Copyrights." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1067 (9th Cir. 2022) (citing *Roberts v. Gordy*, 877 F.3d 1024, 1030 (11th Cir. 2017)). If there was an intentional misrepresentation, the court must then "request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* at 1064; 17 U.S.C. § 411(b)(2).

Given the Court's finding above that the counterclaim fails to sufficiently allege joint authorship, the allegations of the second counterclaim likewise fail. To prevail on the second counterclaim, GCF must allege with particularity the circumstances surrounding the fraud. *See* Fed. R. Civ. P. 9(b). This counterclaim hinges entirely on the premise that Mr. David and GCF/George Chiala, Jr. were coauthors of the logo, and for the reasons stated above, this fact is insufficiently alleged. The Court therefore DISMISSES the second counterclaim, with leave to amend.

The Court declines, however, to strike this counterclaim under Rule 12(f) as duplicative of GCF's affirmative defense. Assuming GCF is able to amend this counterclaim to state a claim, GCF can still present a controversy that the logo application to the Copyright Office was fraudulent, even if Mr. David ultimately dismisses his claim for copyright infringement.

**C. Third Counterclaim**

GCF's third counterclaim seeks a declaratory judgment that GCF has "an implied license to include Plaintiff's Work in its marketing efforts." Counterclaim ¶ 43. Mr. David moves to dismiss,

arguing that GCF "fail[ed] to allege sufficient facts to establish any of these elements, rendering their claim implausible under Rule 12(b)(6)." Dkt. No. 70 at 15. Mr. David also moves to dismiss under California Civil Code § 988(c), arguing that GCF "cannot establish a legally cognizable implied license claim without evidence of an explicit written agreement transferring reproduction rights." *Id.* at 17.

**1. Factual Background**

GCF alleges that in early 2000, it approached Ms. David and Mr. David about creating a logo for GCF. *Id.* ¶ 8. "Around March 2000, the GCF began using the GCF Logo in all aspects of company branding . . . . There was never a discussion about licensing the GCF Logo and [George Chiala, Jr.] believed that the GCF had purchased all rights to the GCF Logo at the outset." *Id.* ¶ 10. GCF also alleges that Mr. David "specifically created the Work or the GCF Logo for the specific use for GCF" and "[d]uring the 25 year relationship . . . never objected to any of the variety of the uses of the Work or the GCF Logo by GCF, and as such GCF was entitled to an unbounded and unlimited scope and use." *Id.* ¶¶ 39, 42. GCF alleges that during the many years of their business relationship, Catharine David Consulting "provided GCF with various marketing deliverables, including business cards, that contained the GCF Logo with knowledge and with the intent that GCF use the marketing materials as part of its business. At no time did Catharine David, nor Plaintiff [Mr. David], raise any issue regarding GCF's use of the GCF Logo." *Id.* ¶ 11.

**2. Legal Standard**

"Though exclusive licenses must be in writing, 17 U.S.C. § 204, grants of nonexclusive licenses need not be in writing, and may be granted orally or by implication." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008). "[A]n implied license is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* at 754-55 (internal quotation marks and footnote omitted). To determine the purported licensor's intent, the Ninth Circuit looks to "(1) whether the

parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible." *Id.* at 756 (citations omitted).

California Civil Code § 988 states, in relevant part:

> (b) Whenever an exclusive or nonexclusive conveyance of any right to reproduce, prepare derivative works based on, distribute copies of, publicly perform, or publicly display a work of art is made by or on behalf of the artist who created it or the owner at the time of the conveyance, ownership of the physical work of art shall remain with and be reserved to the artist or owner, as the case may be, unless such right of ownership is expressly transferred by an instrument, note, memorandum, or other writing, signed by the artist, the owner, or their duly authorized agent.
>
> (c) Whenever an exclusive or nonexclusive conveyance of any right to reproduce, prepare derivative works based on, distribute copies of, publicly perform, or publicly display a work of art is made by or on behalf of the artist who created it or the owner at the time of the conveyance, any ambiguity with respect to the nature or extent of the rights conveyed shall be resolved in favor of the reservation of rights by the artist or owner, unless in any given case the federal copyright law provides to the contrary.

Cal. Civ. Code § 988.

**3. Analysis**

The Court rejects Mr. David's argument for dismissing the third counterclaim under California Civil Code § 988. As GCF's brief points out, Mr. David's motion misquotes the statute and cites to a nonexistent case. Dkt. No. 73 at 18. Mr. David's motion represents: "Section 988(c) clearly states: 'A transfer of ownership of a work of fine art or a transfer of any reproduction right shall be in writing.'" Dkt. No. 70 at 17. Section 988 does not contain the quoted language, and Mr. David's misquotation of a statute reflects poorly on his and his counsel's credibility. The Court further admonishes Mr. David for citing a nonexistent case: *Morgan v. State of California*, 157 Cal. App. 4th 914, 922 (2007). *See* Dkt. No. 70 at 17. According to Mr. David, this case stands for the proposition that "California courts have consistently enforced [Section 988] strictly, requiring

explicit written agreements to establish any ownership transfer or reproduction rights, thereby precluding implied licenses based merely on oral agreements, informal conduct, or partial performance." *Id.* No case of this name analyzes Section 988, and the reporter citation is to a case regarding workers' compensation, *Perrillo v. Picco & Presley*, 157 Cal. App. 4th 914 (2007). Mr. David's argument could be rejected on these grounds alone.[3]

The Court also rejects Mr. David's reliance on Section 988 on the merits. Mr. David's argument rests on a misunderstanding of the third counterclaim. Section 988 "provides that where there is a conveyance of certain rights to a work of art, the ownership of the work of art is not thereby also conveyed unless there is a writing, signed by the artist or owner, explicitly conveying title." *Chamberlain v. Cocola Assocs.*, 958 F.2d 282 (9th Cir. 1992). The legislative history of Section 988 shows that the statute was intended to address a problem when existing law "contain[ed] no provisions reserving ownership of the physical work of art by the artist when reproduction rights are conveyed." *Id.* at 284 (citing Letter of Alan Sieroty dated Sept. 2, 1982). GCF's third counterclaim does not assert GCF's ownership of the logo but seeks a declaration that GCF has an implied license to use the logo in its marketing materials. Mr. David does not grapple with the line of Ninth Circuit cases explaining that implied licenses need not be in writing. *See Gagnon*, 542 F.3d at 754; *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990)).

The Court turns now to Mr. David's argument that GCF's third counterclaim is pled insufficiently. The Court finds GCF has sufficiently pled the elements for an implied license. First, GCF pled that "GCF specifically requested the creation of the Work" and discusses this in more detail in the facts section of the counterclaim. *See* Counterclaim ¶¶ 8-9, 36. Second, GCF pled that Mr. David "specifically created the Work or the GCF Logo for the specific use for GCF" and the Court assumes delivery because GCF states it began using the logo starting around March 2000 in all aspects of company branding. *Id.* ¶¶ 10, 39.

As to the third element, the Court also takes as true GCF's assertions that Mr. David intended for GCF to copy and distribute the logo. GCF alleges that its use of the logo was "unlimited [in]

[3] In his reply brief, Mr. David acknowledged the error and stated that his intent had been to cite to *Chamberlain v. Cocola Assocs.*, 958 F.2d 282 (9th Cir. 1992). Dkt. No. 77 at 11 n.1.

scope" and that "[d]uring the 25 year relationship, CDC, Catherine [sic] David and Plaintiff, [sic] never objected to any of the variety of uses of the Work or the GCF Logo by GCF[.]" Counterclaim at 15 ¶¶ 37, 42. GCF further alleges that "GCF specifically and periodically paid CDC, Catherine [sic] David and Plaintiff consideration for marketing services including the ownership and use of creations including the Work or the GCF Logo, making the agreement irrevocable." *Id.* ¶ 40. GCF alleges that around March 2000 it began using the GCF logo "in all aspects of company branding." *Id.* ¶ 10. For years, GCF used the logo on business cards, signs, company vehicles, promotional merchandise, etc., all with Mr. David's full awareness of the logo's use. *Id.* ¶¶ 11, 13, 15-22. These allegations add up to "more than a sheer possibility" that the "use of the material without the creator's involvement or consent was permissible." *See Iqbal*, 556 U.S. at 678; *Gagnon*, 542 F.3d at 756 (citation omitted). Thus, GCF has sufficiently pled all elements of an implied license claim.

The Court rejects Mr. David's argument that the first and third counterclaims must be dismissed for contradicting each other. The Ninth Circuit allows contradictory claims, so GCF can plead both joint authorship as well as implied license. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007).

Accordingly, the Court DENIES Mr. David's motion to dismiss the third counterclaim.

**D. Affirmative Defenses**

Mr. David also moves to strike all of GCF's affirmative defenses, arguing that some are redundant, that some are not affirmative defenses, and that they are insufficient under the *Twombly/Iqbal* standard. Dkt. No. 70 at 18-22. In response, GCF contends that "'extensive factual allegations' are not required as a matter of law" and the affirmative defenses are sufficient to provide Mr. David with "fair notice." Dkt. No. 73 at 19-21.

Although the Ninth Circuit has yet to rule on the issue, the majority of district courts require affirmative defenses to meet the heightened pleading standard articulated by the Supreme Court in *Twombly* and *Iqbal*. *See CTF Dev. Inc. v. Penta Hospitality, LLC*, No. C 09-02429 WHA, 2009 WL 3517617, at *7-8 (N.D. Cal. Oct. 26, 2009) (requiring defendants "to proffer sufficient facts and law to support an affirmative defense"); *see also Barnes v. AT&T Pension Benefit Plan-*

*Nonbargained Program*, 718 F. Supp. 2d 1167, 1171-72 (N.D. Cal. 2010) (finding there is "no reason why the same principles applied to pleading claims should not apply to the pleading of affirmative defenses"); *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649-50 (D. Kan. 2009) (collecting cases in which district courts applied *Twombly* and *Iqbal* to affirmative defenses). Applying a heightened standard to affirmative defenses also "weed[s] out the boilerplate listing of affirmative defenses which is commonplace in most defendants' pleadings where many of the defenses alleged are irrelevant to the claims asserted." *Barnes*, 718 F. Supp. 2d at 1172. This Court agrees with the majority of district courts and applies the heightened *Twombly/Iqbal* pleading standard to affirmative defenses.

Applying this standard, GCF's affirmative defenses fail on their face. Each asserted defense is stated as a conclusion, devoid of any supporting facts that might indicate plausibility. For example, the second affirmative defense that Mr. David's claims are barred by the applicable statute of limitations should cite to a particular statute and the relevant time periods but fails to do so. *See* Dkt. No. 21 at 3. Several are redundant, as pointed out by Mr. David. *See* Dkt. No. 70 at 18. In addition, some of the listed defenses are not affirmative defenses. *See Hernandez v. Dutch Goose, Inc.*, No. C 13-03537 LB, 2013 WL 5781476, at *7 (N.D. Cal. Oct. 25, 2013) (striking failure to state a claim and lack of standing because they are not affirmative defenses); *see also Roland Corp. v. Inmusicbrands, Inc.*, No. 16-CV-06256-CBM-AJWx, 2017 WL 513924, at *2 (C.D. Cal. Jan. 26, 2017) (striking defense of non-infringement because it is not an affirmative defense). Because the defenses fail to provide Mr. David with fair notice, they are deficient.

Accordingly, Mr. David's motion to strike GCF's affirmative defenses from the answer is GRANTED, with leave to amend.

## III. Catharine David's Motion to Dismiss Amended Third-Party Complaint

Third-Party Defendants Catharine David and CDC move to dismiss George Chiala Farms' Amended Third-Party Complaint, which alleges that CDC facilitated GCF's use of the logo.[4] CDC

[4] For ease of reference, this section refers to Ms. David the individual and CDC the business collectively as "CDC."

moves to dismiss all claims on the basis of GCF's failure to state a claim under *Twombly*/*Iqbal*, failure to meet the heightened pleading requirements of Rule 9(b), and failure to plead scienter. Dkt. No. 71 at 4-5.

**A. Restitution and Unjust Enrichment (First Cause of Action)**

GCF's first cause of action is for unjust enrichment, which CDC moves to dismiss for failure to allege the necessary elements. Dkt. No. 49, Am. Third-Party Compl. ¶¶ 36-43; Dkt. No. 71 at 9. "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). As the Ninth Circuit has explained, "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). "However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (citing 55 Cal. Jur. 3d Restitution § 2).

The Court finds the claim for restitution and unjust enrichment claim sounds in fraud but does not meet the pleading standard under Rule 9(b) or Rule 12(b)(6). GCF does not seem to dispute that the claim rests on a theory that CDC has worked a fraud on GCF but argues in its papers that it sufficiently pled fraud. *See* Dkt. No. 74 at 9. The amended third-party complaint, however, pleads only in conclusory fashion that CDC was unjustly conferred a benefit through fraud. At most, GCF alleges that it "paid CDC for her services, namely marketing" and that "CDC sat by and facilitated GCF's use of that logo without advising GCF of Plaintiff's ownership claims." Am. Third Party Compl. ¶¶ 37-40. These allegations are not sufficient to support a claim that CDC unjustly enriched itself by working a fraud on GCF.

The Court GRANTS the motion to dismiss the first cause of action from the amended third-party complaint, with leave to amend.

**B. Breach of Implied License (Second Cause of Action)**

GCF's second cause of action seeks a declaratory judgment of breach of implied license. GCF claims it has "an implied license to include Plaintiff's Work in its marketing efforts" and that, if GCF breached the implied license, then the breach was by CDC "through their actions in conducting GCF's marketing and advertising and use of the logo in same." Am. Third-Party Compl. ¶ 54. GCF alleges that "CDC and Plaintiff provided the logo to GCF to use however it pleased." *Id.* ¶ 53. CDC moves to dismiss the complaint as barred by California Civil Code Section 988(c) and for failure to plead sufficient factual allegations. Dkt. No. 71 at 9.[5]

The Court discussed the elements for an implied license and California Civil Code Section 988(c) in discussing GCF's third counterclaim above. For the same reasons discussed above, the Court finds GCF's second cause of action is not barred by Section 988.

Similarly, the Court finds GCF has adequately pleaded the elements for a declaratory judgment of breach of implied license. The pleadings allege that "GCF specifically requested the creation of the Work" and that it was created and delivered to GCF "not only when it was complete, but continuously throughout the parties' 24-year working relationship." Am. Third-Party Compl. ¶¶ 46-47. This satisfies the first and second elements of an implied license. *See Gagnon*, 542 F.3d at 754. For the third element of the licensor's intent that the licensee copy and distribute the work, GCF alleges that "[d]uring the almost-25 year relationship, CDC and Plaintiff provided the logo to GCF to use however it pleased." Am. Third-Party Compl. ¶ 53. Taking these allegations as true and considering the twenty-five year long business relationship between the parties, the Court finds GCF has adequately alleged that, if it breached any implied license, the breach was committed by CDC in its capacity performing marketing work for GCF. The Court will not at this time wade into the factual dispute—which is outside the scope of the pleadings—regarding whether the breach would have occurred before or after the June 2024 date by which Mr. David told GCF to cease using the logo. GCF has sufficiently alleged at this time that any breach was due to CDC's conduct.

Therefore, the Court DENIES the motion to dismiss the second cause of action.

---

[5] CDC also briefly mentions federal preemption considerations in the context of an argument that there is inadequate pleading but does not clearly explain how GCF has "conflate[d] federal copyright law with state contract principles." Dkt. No 71 at 12.

**C. Negligent Misrepresentation (Third Cause of Action)**

GCF alleges in the third cause of action that CDC "repeatedly and knowingly made false representations with the intent to deceive GCF regarding CDC's authority to use the GCF logo for the marketing and advertising for GCF." Am. Third-Party Compl. ¶ 56. CDC moves to dismiss the claim for failing to meet the Rule 9(b) requirements for pleading fraud. Dkt. No. 71 at 12. GCF counters that Rule 9(b) does not apply to negligent misrepresentation. Dkt. No. 74 at 12-13.

District courts in the Ninth Circuit are split on whether Rule 9(b)'s heightened pleading requirements apply to negligent misrepresentation claims under California law. *See, e.g.*, *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.") (citations omitted); *contra Levit v. Nature's Bakery*, 767 F. Supp. 3d 955 (N.D. Cal. 2025). The Court need not wade into this dispute today because GCF's allegations of a negligent misrepresentation claim meet the heightened pleading standard of Rule 9(b) in any event.

Under California law, to state a claim for negligent misrepresentation, a plaintiff must allege that the defendant made: (1) a misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n. 2 (9th Cir. 2001).

Here, GCF alleges that CDC made "false representations . . . regarding CDC's authority to use the GCF Logo for the marketing and advertising for GCF." Am. Third-Party Compl. ¶ 56. CDC made these representations throughout the parties' roughly twenty-five year business relationship. *Id.* ¶ 25. "Prior to 2024, CDC never informed anyone at GCF that Plaintiff claimed any ownership rights in the logo or that GCF would need permission to use the logo" and in fact represented that GCF had full ownership and control of the logo. *Id.* ¶ 58. GCF further alleges that CDC had no reasonable grounds for believing GCF's control and ownership of the logo to be true because Mr.

David was "involved in the design work provided to GCF by CDC" and "Catharine David is married to" Mr. David and the couple have been working together since 2000. *Id.* ¶ 19.

GCF has also sufficiently alleged the remaining elements of negligent misrepresentation. Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). GCF's allegation that CDC "made false representations with the intent to deceive GCF regarding CDC's authority to use the GCF Logo" sufficiently alleges the element of "intent to induce" reliance. Am. Third-Party Compl. ¶ 56. GCF believed that it had "purchased all rights to the GCF Logo at the outset" and "reasonably relied upon CDC's misrepresentation regarding its authority to provide GCF with the GCF Logo for its various uses." *Id.* ¶¶ 16, 57. GCF alleges that, in reliance on the belief that it had full control and ownership of the logo and that CDC had authority to use the logo, GCF has "incurred and continues to incur substantial expenses in defending and prosecuting the instant suit." *Id.* ¶ 35. The who, what, when, where, and how are all provided sufficiently to "give defendants notice." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).

CDC also argues that the third cause of action should be dismissed because GCF has "alleged no facts to satisfy a claim of fiduciary duty owed to them by CDC or Ms. David." Dkt. No. 71 at 16. Under California law, "responsibility for negligent misrepresentation rests upon the existence of a legal duty . . . owed by a defendant to the injured person." *Eddy v. Sharp*, 199 Cal. App. 3d 858, 859 (1988). The Court begins by again reprimanding CDC's counsel for citing a nonexistent case in the brief. CDC argues, "Courts consistently hold that independent contractors are not fiduciaries and owe no duty to act in the interest of the hiring party unless explicitly agreed upon in a contract. *Humphries v. Rice*, 88 Cal. App. 4th 1413, 1424 (2001)." Dkt. No. 71 at 16.[6] CDC acknowledged the mistake in its reply brief and said it had intended to cite to *Eddy v. Sharp*, 199 Cal. App. 3d 858, 859 (1988). Because this is the second time the Davids' counsel has cited a nonexistent case in the moving papers, the Court will not credit this argument. And in any event,

[6] A search for 88 Cal. App. 4th 1413 results in a medical malpractice suit named *Galvez v. Frields*. A search for the case name "*Humphries v. Rice*" results in a Supreme Court of Alabama tort case from a dog attack, 600 So. 2d 975 (Ala. 1992).

the Court finds *Eddy v. Sharp* does not stand for the proposition that CDC asserts.

The Court DENIES CDC's motion to dismiss the third cause of action.

**D. Fraud (Fourth Cause of Action)**

GCF's fourth cause of action alleges that CDC misrepresented that GCF had permission to use the logo when in reality GCF was infringing on Mr. David's copyright. Am. Third-Party Compl. ¶¶ 62, 64. CDC argues that GCF's fraud claim fails to state a claim, fails to meet the standards of Rule 9(b), and fails to adequately plead scienter. Dkt. No. 71.

Under California law, the elements of common law fraud are "a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damage." *Gil v. Bank of Am.*, 138 Cal. App. 4th 1371, 1381 (2006). As discussed above, intent to defraud may be alleged generally. *See* Fed. R. Civ. P. 9(b). The Court finds GCF has adequately pled scienter through its allegations that "CDC repeatedly and knowingly made false representations with the intent to deceive GCF regarding CDC's authority to use the GCF Logo," that "CDC intended Plaintiff to rely on their statement and actions," and that "[b]y sending GCF and third parties the logo, thus permitting their use of it, CDC represented that there was no issue in GCF using the logo without specific approval from Plaintiff." *See* Am. Third-Party Compl. ¶¶ 56, 66.

The Court DENIES CDC's motion to dismiss the fourth cause of action.

**E. Fraudulent Concealment (Fifth Cause of Action)**

GCF alleges that CDC fraudulently concealed the fact that Mr. David was the sole owner of the logo. Am. Third-Party Compl. ¶ 71. CDC argues that GCF has not sufficiently alleged the elements of affirmative acts of concealment and a duty to disclose in order to establish fraudulent concealment. Dkt. No. 71 at 21-22.[7]

---

[7] The required elements of fraudulent concealment are: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or

The Ninth Circuit has held that "[s]ilence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure." *Rutledge v. Bos. Woven Hose & Rubber Co*., 576 F.2d 248, 250 (9th Cir. 1978). Under California law, the duty to disclose for purposes of fraudulent concealment arises under four circumstances: "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; [or] (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 255-56 (2011) (citations omitted). For (2)-(4), a duty to disclose "arises only when the parties are in a relationship that gives rise to the duty, such as seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement." *Bigler-Engler v. Breg, Inc*., 7 Cal. App. 5th 276, 311 (2017) (internal quotation marks and citations omitted).

GCF alleges that it had a "working relationship with Catharine David and Plaintiff for over 25 years[,]" with the Davids "providing design and advertising" to GCF and with CDC providing GCF "with various marketing deliverables[.]" Am. Third-Party Compl. ¶ 8. This transactional relationship imposed a duty upon CDC to disclose the ownership of the logo even without an explicit contractual arrangement. *See Bigler-Engler*, 7 Cal. App. 5th at 311. Furthermore, GCF has sufficiently alleged concealment of a material fact through allegations that (1) "CDC intentionally failed to inform [GCF] that her husband and business partner Plaintiff took the position from 2000 to 2024 that GCF did and does not have permission to use the logo," and (2) that "CDC and Catharine further intentionally failed to inform [GCF] . . . that [Mr. David] was the sole owner of the logo." Am. Third-Party Compl. ¶ 71.

The Court thus DENIES CDC's motion to dismiss the fraudulent concealment claim.

---

suppression of the fact." *Broge v. ALN Int'l, Inc*., No. 17-CV-07131-BLF, 2018 WL 2197524, at *4 (N.D. Cal. May 14, 2018) (quoting *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605-06 (2014)).

United States District Court
Northern District of California

///

**E. Negligence (Sixth Cause of Action)**

GCF alleges in the sixth cause of action that "CDC breached her duty to GCF to ensure that she had permission to use the logo before using it." Am. Third-Party Compl. ¶ 82.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).

Beginning with the first element, GCF alleges that, given CDC's job in performing marketing services for GCF, "CDC had a duty to act lawfully and ensure that all content used in marketing services was licensed and available to use without repercussion." Am. Third-Party Compl. ¶ 79. As explained above with regard to negligent misrepresentation, the Court finds that parties in a business transaction such as the one alleged here are under a duty to exercise reasonable care "to act lawfully and ensure that all content used in marketing services was licensed and available to use without repercussion." *See id.*

Having found this duty exists, the Court finds the remaining negligence elements sufficiently alleged. Taking the pleadings as true, GCF hired CDC to perform marketing services, CDC had a legal duty to perform that job with reasonable care, and CDC breached that duty by using a logo on GCF's marketing materials in a way that infringed on Mr. David's copyright. GCF now finds itself defending this lawsuit for copyright infringement by Mr. David as a result of that breach.

The Court DENIES CDC's motion to dismiss GCF's sixth cause of action for negligence.

**F. Breach of Implied Contract (Seventh Cause of Action)**

GCF alleges that "the parties had an implied contract by which CDC would provide marketing services to GCF in a lawful manner" and CDC breached the contract by failing "to implement measures designed to ensure that it was not infringing third party intellectual property." Am. Third-Party Compl. ¶ 88. CDC moves to dismiss the breach of implied contract claim for failing to plead facts establishing the formation of an implied contract. Dkt. No. 71 at 29, 32.

"A cause of action for breach of implied contract has the same elements as does a cause of

action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). "An implied-in-fact contract is 'founded on a meeting of the minds, which ... is inferred, as a fact, from conduct of the parties showing in light of the surrounding circumstances, their tacit understanding.'" *Moreno v. Los Angeles Child Care & Dev. Council*, 963 F. Supp. 876, 879 (C.D. Cal. 1997) (quoting *Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923)). The "essential elements" of a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

The Court concludes that GCF has sufficiently stated a claim for breach of an implied contract at this stage. CDC's motion misapprehends the nature of GCF's claim, arguing that CDC's provision of marketing services to GCF "does not imply that ownership of the intellectual property is included in any implied contract[.]" Dkt. No. 71 at 30. GCF's claim is not that it had an implied contract to own the logo but that, by hiring CDC to provide marketing services, GCF and CDC entered into an implied contract that CDC would perform the work in a lawful manner. GCF alleges that CDC breached that implied contract by using work that Mr. David now says he is sole copyright owner of and that GCF, through CDC, was not authorized to use.

The Court DENIES CDC's motion to dismiss GCF's claim for breach of implied contract.

## IV. George Chiala Farms' Motion to Dismiss and to Strike

Defendant George Chiala Farms has also moved to dismiss the second, third, and fourth claims against it from Mr. David's first amended complaint.[8] GCF also moves to strike Mr. David's prayer for statutory damages and attorneys' fees. After the motion was fully briefed, Mr. David filed a notice of voluntary dismissal of the second and third claims, for fraudulent procurement of trademark designation and false designation of origin. Dkt. No. 85 at 2. GCF does not move to

[8] George Chiala Farms acknowledges that it misnumbered the claims in its motion papers. *See* Dkt. No. 83 at 2 n.1. In places, the motion mistakenly asks to dismiss the third, fourth, and fifth claims. There is no fifth claim in the FAC.

dismiss the first claim, for copyright infringement. Thus, the only claim still challenged on the motion is the fourth claim, brought under California's Unfair Competition Law (UCL), Cal. Bus. Prof. Code § 17200 et seq.

**A. Fraudulent and Unfair Business Practices in Violation of the UCL**

GCF moves to dismiss Mr. David's claims brought under California's Unfair Competition Law. GCF argues that the UCL claim is preempted by the federal Copyright Act, that plaintiff has no standing to assert a UCL claim, and that the claim also fails on the merits.

The UCL "prohibits any 'unlawful, unfair or fraudulent business act or practice." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (citation omitted).

With Mr. David having now dismissed his claims for fraudulent trademark procurement and false designation of origin, it is not clear whether his theories under the UCL are still viable. *See* Dkt. No. 79 at 8-9; Dkt. No. 85. In Mr. David's opposition brief, he states that his UCL claim under the "unlawful" prong is based on his claims for fraudulent trademark procurement and false designation of origin; that his UCL claim under the "fraudulent" prong is based on false trademark registration; and that his claim under the "unfair" prong is based on GCF's appropriation of Mr. David's "creative work through fraudulent registration . . . ." Dkt. No. 79 at 8-9. But after filing that brief, Mr. David has dismissed the underlying claims.

To the extent that Mr. David bases his UCL claim on a violation of his alleged copyright in the works, such claim may be precluded under the Copyright Act. The Ninth Circuit has explained:

> A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be "rights that are equivalent" to those protected by the Copyright Act. 17 U.S.C. § 301(a); 1 Nimmer, § 1.01[B] at 1–11. Second, the work involved must fall within the "subject matter" of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103. *Id.*

*Kodadek v. MTV Networks,* Inc., 152 F.3d 1209, 1212 (9th Cir. 1998). Determining whether preclusion applies requires the Court to "examine the nature of [the] unfair competition claim to

United States District Court
Northern District of California

discern what rights [the plaintiff] seeks to enforce with state law." *Id.* Mr. David's allegation, for instance, that GCF is liable under the UCL due to its "willful infringement of Plaintiff's Copyrighted Works" would plainly be preempted under the Copyright Act. *See* Marc David FAC ¶ 73. Because the factual basis for Mr. David's UCL claim is unclear in light of his subsequent dismissal of certain other claims, the Court finds dismissal of this claim to be appropriate. The Court grants Mr. David leave to amend the UCL claim.

**B. Prayer for Relief**

GCF also moves to dismiss and/or strike Mr. David's prayer for statutory damages and attorneys' fees. Dkt. No. 75 at 24-25. In the FAC, Mr. David seeks statutory damages for copyright infringement of $150,000 for GCF's alleged infringement of two copyrighted works: the GCF logotype and the image titled "Agricultural Field at Sunrise." *See* Marc David FAC ¶¶ 39, 46; *id.* at 19; *id.*, Ex. A, B, C. He also seeks attorneys' fees for copyright infringement under 17 U.S.C. § 505. *Id.* at 20. Under 17 U.S.C. § 412(2), however, statutory damages and attorneys' fees are not available for infringements that commenced before registration. GCF's position is that the alleged infringement occurred long before the copyright registration, when GCF began using the logo (registered May 2021) in 2000 and began using the image (registered April 2024) in 2012. Dkt. No. 75 at 24-25. In his opposition brief, Mr. David states that "GCF's use was authorized by Plaintiff for decades through a limited scope license" that Mr. David revoked as of June 17, 2024. Dkt. No. 79 at 12-13. Thus, according to Mr. David, the infringement did not begin until June 2024, after the copyright registration of the works.

The Court denies GCF's motion to dismiss or strike the prayer for statutory damages and attorneys' fees. A leading treatise explains that:

> The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose. Thus, the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.

Wright & Miller, Fed. Practice & Procedure § 1255 (3d ed. 2004). Moreover, in *Whittlestone, Inc.*

*v. Handi-Craft Co.*, the Ninth Circuit held that "Rule 12(f) . . . does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." 618 F.3d 970, 974-75 (9th Cir. 2010). Here, the question of whether Mr. David may be entitled to statutory damages under the Copyright Act is too intertwined with factual disputes inappropriate for resolution at this stage—including the existence, validity, and timing of any license Mr. David may have granted to GCF. And even if Mr. David is not entitled to statutory damages under 17 U.S.C. § 504(c), he may still be entitled to recover "actual damages and profits under § 504(b) . . . ." *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707 n.5 (9th Cir. 2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004). Accordingly, whether or not Mr. David is entitled to statutory damages specifically is not dispositive for pleading purposes. *See* Fed. Practice & Procedure § 1255.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Mr. David's motion to dismiss GCF's first and second counterclaims, with leave to amend. The Court DENIES Mr. David's motion to dismiss GCF's third counterclaim for declaratory judgment of implied license. The Court GRANTS Mr. David's motion to strike GCF's affirmative defenses, with leave to amend.

The Court GRANTS CDC's motion to dismiss GCF's first cause of action from the amended third-party complaint, with leave to amend. The Court DENIES the balance of CDC's motion.

The Court GRANTS GCF's motion to dismiss Mr. David's UCL claim from the FAC, with leave to amend. The Court DENIES GCF's motion to dismiss or strike the prayer for statutory damages and attorneys' fees.

All parties must file any amended complaint, counterclaim, or third-party complaint **no later than November 21, 2025.**

**IT IS SO ORDERED**.

Dated: November 7, 2025

Susan Illston

SUSAN ILLSTON
United States District Judge